**UNITED STATES of America**

v.

**Kelvin HARRINGTON, Defendant.**

**Crim. No. 89–138–01–LFO.**

United States District Court,
District of Columbia.

Dec. 18, 1992.

James Arthur Meade, Asst. U.S. Atty., Crim. Div., Washington, DC, for U.S.

W. Gregory Spencer, Asst. Federal Public Defender, Washington, DC, for defendant Kelvin Harrington.

Bruce Baird, Liran Gordon, Covington & Burling, Washington, DC, for amicus curiae.

## MEMORANDUM

OBERDORFER, District Judge.

On June 29, 1989, defendant Kelvin Harrington was convicted on three counts for illegal distribution and possession with intent to distribute cocaine base. Although the guideline range applicable to defendant was 97 to 121 months, at sentencing the Court departed downward to require defendant to serve the statutory minimum term of 5 years, based on defendant's significant pretrial efforts at drug rehabilitation. The Court concluded that drug rehabilitation was an additional mitigating factor "of a kind ... not adequately taken into consideration by the Sentencing Commission in formulating the guidelines," pursuant to 18 U.S.C. § 3553(b).[1] *See United States v. Harrington*, 741 F.Supp. 968 (D.D.C.1990) (*"Harrington I"*).

On appeal, although the District of Columbia Circuit recognized that "Congress and the Commission have not squarely addressed the issue" of departure for drug rehabilitation, *United States v. Harrington*, 947 F.2d 956, 962 (D.C.Cir.1991) (*"Harrington II"*),[2] the court concluded that departure on this ground was inappropriate. Rather than hold that drug rehabilitation was an additional factor not adequately considered by the Commission, the Court of Appeals concluded that drug rehabilitation was encompassed in the provision for acceptance of responsibility. U.S.S.G. § 3E1.1.[3] On remand for resentencing, therefore, the Court of Appeals invited this Court to determine whether Harrington's rehabilitation efforts justify a two level reduction for acceptance of responsibility, pursuant to § 3E1.1.

The Court of Appeals distinguished the decision of the Southern District of New York in *United States v. Rodriguez*, 724 F.Supp. 1118 (S.D.N.Y.1989), which departed from the guidelines on the basis of the defendant's rehabilitation effort and personal characteristics. U.S.S.G. Ch. 5, Pt. H. Instead the court chose to "follow the lead" of its sister circuits, particularly *United States v. Sklar*, 920 F.2d 107, 115–117 (1st Cir.1990),[4] that "post-offense but pretrial drug rehabilitation effort may justify a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1." *Harrington II*, 947 F.2d at 962.

In conspicuous addition, the Court of Appeals stated that, " 'on rare occasion,' a further reduction might be in order [pursuant to U.S.S.G. § 5K2.0], 'but only when and if the rehabilitation is "so extraordinary as to suggest its presence *to a degree* not adequately taken into consideration by the acceptance of responsibility reduction." ' " *Id., quoting Sklar*, 920 F.2d at 116 (citation omitted) (emphasis added); *see also United States v. Williams*, 948 F.2d

---

1. U.S.S.G. § 5K2.0 elaborates two grounds under which a court may fully depart from the guidelines pursuant to 18 U.S.C. § 3553(b):

   [1] Any case may involve factors in addition *to those identified that have not been given* adequate consideration by the Commission. Presence of any such factor may warrant departure from the guidelines, under some circumstances, in the discretion of the sentencing court. [2] Similarly, the court may depart from the guidelines, even though the reason for departure is taken into consideration in the guidelines (*e.g.,* as a specific offense characteristic or other adjustment), if the court determines that, in light of unusual circumstances, the guideline level attached to that factor is inadequate.

2. For a scholarly evaluation of the Court of Appeals' *Harrington* analysis, *see* Stephen J. Schulhofer, *Assessing the Federal Sentencing Process: The Problem is Uniformity, Not Disparity,* 29 Am.Cr.L.Rev. 833, 867–870 (1992).

3. U.S.S.G. § 3E1.1(a) permits a two-level reduction in offense level "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense."

4. Since the Court of Appeals decision, additional leadership has been provided by the Second Circuit in *United States v. Maier*, 975 F.2d 944 (2d Cir.1992), holding that drug rehabilitation was not adequately considered pursuant to, *inter alia,* U.S.S.G. § 3E1.1, and that defendant's rehabilitation efforts and medical needs justified departure in that case. The court concluded that, contrary to the assumption of the Sentencing Commission and other circuits, "Congress expressed no hostility to rehabilitation as an objective of *sentencing.*" *Id.* at 946–47.

706 (11th Cir.1991). In *Sklar*, the First Circuit noted that § 5K2.0 establishes two routes to a valid departure:

> One avenue is qualitative: a district court may depart if it finds an aggravating or mitigating circumstance "of a kind" not considered by the Sentencing Commission in formulating the guidelines. The other avenue is quantitative: a district court may depart if it finds a material circumstance which, although considered by the Sentencing Commission, is present "to a degree" neither readily envisioned nor frequently seen in connection with the offender and/or the offense of conviction.

920 F.2d at 115 (citations omitted). The D.C. Circuit in *Harrington II* rejected the district court's effort to depart from the guidelines on the first of these grounds, but invited reconsideration based on the second.

█ In view of the foregoing, a sentencing court may find that a defendant's drug rehabilitation efforts justify a downward departure from the guidelines in two ways: by entitling the defendant to a two-level reduction pursuant to § 3E1.1, and "on rare occasion," by justifying full departure from the guidelines where a defendant's drug rehabilitation efforts are of a degree so extraordinary that "in light of unusual circumstances, the guideline level attached to [§ 3E1.1] is inadequate." § 5K2.0.

At the time the defendant was originally sentenced, the record may well have supported a specific finding that his efforts to free himself of the addiction were "extraordinary." The Court made no specific finding in those terms in the original sentencing decision, however. The D.C. Circuit instructed that, on remand, the district court should focus on Harrington's *"post-offense but pretrial* drug rehabilitation ef-

fort," *Harrington II*, 947 F.2d at 962 (emphasis added), and that defendant's *pretrial* efforts should be the "prime indicator of his acceptance of responsibility for criminal conduct." *Id.* at 963.

Since that opinion was written, however, the Sentencing Commission amended the guidelines to allow consideration of "post-offense" rehabilitation efforts under § 3E1.1.[5] The Commission's decision to limit consideration to "post-offense" rehabilitation efforts, rather than to adopt the D.C. Circuit's more stringent limitation to "post-arrest *but pretrial*" rehabilitation, necessarily implies that all post-offense efforts prior to sentencing may be taken into consideration in Harrington's case. As required by U.S.S.G. § 1B1.11, "the resentencing will occur under the new version of the Guidelines unless such an application would violate the Ex Post Facto Clause of the Constitution." *United States v. Hicks*, 978 F.2d 722 (D.C.Cir. November 3, 1992), at 726–27. As no such violation would occur here, the November 1, 1992 amendment to § 3E1.1 is controlling in this case.[6]

In addition to the record before the Court at the original sentencing, the record now contains evidence of defendant's significant post-conviction rehabilitation efforts. Accordingly, the entire record is now reexamined on remand for further findings in light of the Court of Appeals opinion and the amended guidelines.

I.

█ The facts demonstrate dramatically that Harrington's rehabilitation efforts, both before his trial and in prison since, have been extraordinary "to a degree not adequately taken into consideration by the acceptance of responsibility reduction." *Harrington II*, 947 F.2d at 962. The opin-

---

5. *See* Comment (g) "post-offense rehabilitative efforts (*e.g.,* counselling or drug treatment)" to § 3E1.1. *Amendments to the Sentencing Guidelines for United States Courts,* 57 Fed.Reg. 20156 (1992). The amendment became effective November 1, 1992.

6. Alternatively, if the amendment of Comment (g) to § 3E1.1 does not apply retroactively to Harrington, the Commission's adoption of this provision, subsequent to the Court of Appeals' opinion in *Harrington,* evidences that the Commission had not adequately considered the efficacy of rehabilitation either at the time of that opinion or at the time Harrington originally was sentenced. Accordingly, it was, and is, the law that extraordinary rehabilitation effort justifies *departure, and this law is* applicable to Harrington's case.

ions of this Court and the Court of Appeals, and the hearings since remand, report his successful struggle before and after his conviction to free himself of his addiction and to provide affirmative leadership for others whose addiction has led them to criminal conduct.

At the time of Harrington's arrest on April 6, 1989, at age 29, he had been addicted to drugs for 12 years. He never before had been arrested. Prior to trial, he participated in Operation Progress, a drug treatment program sponsored by the D.C. Department of Corrections. *Harrington I,* 741 F.Supp. at 969. All Harrington's requisite pre-conviction urine samples were submitted and tested negative for illegal drugs. Clinton R. Boyd, Chief of the Office of Rehabilitative Services, D.C. Department of Corrections, rated Harrington's participation in the program as "excellent" and observed that Harrington participated with maturity and "a desire to become a productive member of society." During this period, Harrington also secured employment on his own initiative. *Id.* at 970.

After his conviction, Harrington voluntarily sought out and enrolled in the Unfoldment Program, a 48–week residential drug treatment program at Lorton Penitentiary, in March, 1990. According to Kemi Morten, the Executive Director of Unfoldment, Harrington's rehabilitation efforts in the program have been "[a] minor miracle, certainly extraordinary." Transcript of Sentencing Proceeding, March 13, 1992, Testimony of Kemi Morten ("Morten Test.") at 15. Harrington's primary counselor testified that Harrington has been a "role model" for the program and has done a remarkable job. Transcript of Sentencing Proceeding, March 13, 1992, Testimony of Jerome F. Jordan ("Jordan Test.") at 39, 44. Harrington's performance has ranked him among the top third (20 people) or fifth (12 people) of the program participants. Morten Test. at 19; Jordan Test. at 41.

Following his successful graduation in March 1991, Harrington was one of only approximately twelve participants who chose to re-enroll in the Unfoldment Program for a second year as an assistant treatment specialist. Defendant "has tremendous responsibilities" in this position. Morten Test. at 6. He is responsible for overseeing approximately twelve new participants, a task that includes preparing weekly progress reports, conducting one-on-one interviews, assisting with group therapy sessions, preparing quarterly addiction severity index reports, and evaluating achievement for qualified participants. *Id.* Harrington's performance in the fulfillment of these duties has been rated as "outstanding." Morten Test. at 7. He has served others with compassion and an aptitude for utilizing treatment methods. Jordan Test. at 40; Morten Test. at 16.

After successfully completing his second year with Unfoldment, in March 1992 Harrington re-enrolled in the program for a third year and continues to serve as an assistant treatment specialist. Defendant's counsel represents, without contradiction, that Harrington is now qualified for, and intends to take, the examination to become a certified addictions counselor in the District of Columbia. He has been tested for drug use throughout his incarceration at Lorton, and all such tests have been negative. Morten Test. at 12.

Outside observers corroborate the conclusion that Harrington's performance has been extraordinary. Dr. Joseph F. Chambers, a psychiatrist specializing in addictive medicine and a board-certified member of the American Society of Addiction Medicine, evaluated Harrington twice, once in April 1990, and again in April 1992. Chambers testified that defendant's performance ranks in the top 10 percent of individuals whom he has observed attempt drug rehabilitation. Transcript of Sentencing Proceedings, May 15, 1992, Testimony of Dr. Joseph F. Chambers ("Chambers Test.") at 29. Prior to Harrington's initial sentencing and after his first examination by Chambers, Chambers determined that Harrington exhibited a dedication to "turning his life around." Chambers Test. at 23. Chambers concluded that, even at that time, Harrington's efforts demonstrated a strong likelihood of ultimate success. Dr. Chambers stated:

[I]f [Harrington] can become concerned about others, and if he can continue his current intense commitment to the treatment throughout his incarceration, and possible parole, the long term prognosis is quite favorable. Most men who do accept this way of life do succeed.

*Harrington I,* 741 F.Supp. at 973.

Following the April 1992 examination, Chambers testified that Harrington "has done extraordinarily well these past two years," and concluded that defendant has accepted responsibility for the conduct for which he was tried and convicted. Chambers Test. at 29; *see also* Transcript of Sentencing Proceedings, May 15, 1992, Testimony of Donald A. Streater ("Streater Test.") at 2. He also stated that Harrington "has the gift of being able to help others to become involved." Chambers Test. at 26. Chambers quoted Jordan as stating, "If I left this building today, Mr. Harrington could run my [Unfoldment] program." *Id.*

Thus, testimony has established that Harrington's response to his drug treatment opportunity before trial and in prison after trial was subjectively "extraordinary" according to the ordinary meaning of that term.[7] His efforts have been remarkable both in their continuity and their results. He has shown unusual initiative in his rehabilitation efforts, early seeking out the Unfoldment Program. Furthermore, Harrington twice voluntarily has re-enrolled in the program, and he consistently has performed among the top participants even in the demanding Unfoldment Program. Most extraordinarily, he has chosen to dedicate himself to lending his own experience to assisting others in overcoming their debilitating drug addiction.

Any contrary evidence in the record indicating that Harrington initially may not have fully recognized the magnitude of his problem is a common feature among individuals in confronting their addiction [8] and does not detract from Harrington's unusual achievement. Nor is this the situation of a defendant who "puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse." *Harrington II,* 947 F.2d at 963 n. 10.[9] As the Court of Appeals acknowledged, Harrington "engaged *pretrial* in notable rehabilitative efforts, which continued throughout the year between conviction and sentencing" and to which he remains committed to the present day. *Id.* at 963.

Moreover, since the defendant was originally sentenced, data developed by the Gen-

---

7. Webster's New International Dictionary (2d ed. 1958) prefers the definition of "extraordinary" as being "[b]eyond or out of the common order or method; not usual, customary, regular or ordinary."

8. Judicial commentary and the rehabilitative literature unanimously agree that drug rehabilitation is an arduous, difficult, and time-consuming process. Recovery from addiction "represents an attempt to militate against one's life history and psychological development." *Maier,* 975 F.2d at 945. *See, e.g.,* Michael J. Stark and Barbara K. Campbell, *Personality, Drug Abuse, and Early Attrition from Substance Abuse Treatment,* 14 Am.J.Drug and Alcohol Abuse 475, 476, 482 (1988); Frank M. Tims and Carl G. Leukefeld, *Relapse and Recovery in Drug Abuse: An Introduction,* in Relapse and Recovery in Drug Abuse (National Institute on Drug Abuse Research Monograph No. 72) 1, 2 (Frank M. Tims and Carl G. Leukefeld, eds., 1986); Frank M. Tims and Carl G. Leukefeld, *The Challenge of Drug Abuse Treatment in Prisons and Jails,* in Drug Abuse Treatment in Prisons and Jails (Na-

tional Institute on Drug Abuse Research Monograph No. 118), 1, 1–3 (Carl G. Leukefeld and Frank M. Tims, eds., 1992); Robert L. Hubbard and Mary Ellen Marsden, *Relapse to Use of Heroin, Cocaine, and Other Drugs in the First Year After Treatment,* in Relapse and Recovery in Drug Abuse, 157, 165; James F. Maddux and David P. Desmond, *Relapse and Recovery in Drug Abuse,* 49, 55.

9. As noted at his initial sentencing, from the time of his arrest, Harrington has admitted his drug addiction—the condition drug rehabilitation treatment is designed to correct. However, he denied, and continues to deny, his guilt of the crime for which he was convicted. He continues to maintain that he was present at the time of the drug search merely as a consumer. Harrington's failure to acknowledge his guilt, though, in no way diminishes the significance of his rehabilitation efforts and his corresponding acceptance of responsibility pursuant to § 3E1.1. *See Harrington II,* 947 F.2d at 962–63. This is particularly true since the amended § 3E1.1 explicitly contemplates drug rehabilitation as a form of acceptance of responsibility.

eral Accounting Office [10] demonstrates statistically how truly extraordinary defendant's efforts have been. According to the GAO Report, out of 62,000 federal prison inmates in 1991, 41,000 had some kind of substance abuse problem at the time of admission; 27,000 of these problems were characterized as moderate to severe. In 1990, Congress directed the Bureau of Prisons to intensify its drug treatment programs. Yet, in 1991, the GAO reported,

> Most inmates with histories of significant substance abuse are not in treatment despite [the Bureau of Prisons'] initiatives to provide them with an intensive treatment program. *Only 364 of the estimated 27,000 inmates with moderate to severe substance abuse problems are receiving treatment within these programs.* The intensive residential programs specifically designed for these inmates are substantially underenrolled, having space for more than double the number of inmates currently enrolled.

GAO Report at 5 (emphasis added). Thus, according to the GAO's own findings, simply by receiving treatment, Harrington ranks among the one-hundredth of one percentile of the 27,000 inmates with moderate to severe substance abuse problems.

The GAO findings confirm that defendant's effort has been objectively extraordinary, when viewed in the context of the nationwide experience of substance abusers in federal prison. His rehabilitation also is "unusual," U.S.S.G. § 5K2.0, or "atypical," U.S.S.G., Ch. 1, Pt. A, 4(b), in the language accepted by the Sentencing Commission.

By any subjective or objective measure, then, Harrington's extraordinary acceptance of responsibility through rehabilitation "is present to a degree substantially in excess of that which ordinarily is [present]." § 5K2.0.[11] In the language of the First Circuit in *Sklar,* as relied upon by the D.C. Circuit: Harrington's "is the occasional instance, where time and circumstances permit and the accused takes full advantage of both, that will produce rehabilitation so dramatic as to cross the boundary." 920 F.2d at 117. It justifies full departure under § 5K2.0.

## II.

In view of the foregoing it is expressly found that the defendant's efforts to free himself of his addiction and to assume leadership role in respect to drug treatment were atypical and extraordinary to a degree not contemplated by the Commission in adopting § 3E1.1. He will be sentenced accordingly: to the substantial statutory minimum of 5 years followed by four years supervised release, with a request to the government that it continue Harrington's access to the in prison drug rehabilitation program.[12]

## SENTENCING ORDER

For the reasons stated in the accompanying Memorandum, it is this 18th day of December, 1992, hereby

10. GAO, *Drug Treatment: Despite New Strategy Few Federal Inmates Receive Treatment* 5 (1991) ("GAO Report").

11. Harrington's rehabilitation is readily distinguishable from that reported in *Sklar* and *United States v. Williams,* where the defendants' rehabilitation efforts were found not to warrant departure. In *Sklar,* the court concluded defendant's successful participation in drug rehabilitation "[was] largely prompted by the specific mandates of his pretrial release agreement." 920 F.2d at 117. Although the defendant's five-month rehabilitation effort in *Williams* were exemplary, that effort, too, was not voluntary, but was mandated by a court order, and the defendant provided no evidence that she actually had successfully completed the program, or indeed, had completed it at all. 948 F.2d at 709 n. 4. By contrast, in addition to his laudible pretrial efforts, most of Harrington's post-offense rehabilitation success has occurred in the entirely voluntary Unfoldment Program, a program that he has successfully completed twice, to which he has been committed unerringly for nearly three years, and about which there is a promising expert prognosis of long term success.

12. Special thanks are owed to Bruce A. Baird, Liran A. Gordon, and the law firm of Covington & Burling, Washington, D.C., for their impressive analysis and assistance as *amicus curiae* in this case.

ORDERED: that the sentence entered on June 27, 1990 should be, and is hereby, VACATED; and it is further

ORDERED: that defendant is sentenced to five years imprisonment on Counts One, Two, and Three, to be served concurrently, with credit for time served; and it is further

ORDERED: that defendant shall serve four years supervised release; and it is further

ORDERED: that defendant shall pay a special assessment of $50 on each of Counts One, Two, and Three, for a total of $150.00.