**UNITED STATES of America, Plaintiff,**

v.

**Alvin WEBB, Defendant.**

**Civil Action No. 94–0245.**

United States District Court, District of Columbia.

May 30, 1997.

William Gregory Spencer, Federal Public Defender for D.C., Washington, DC, for Alvin Webb.

Peter Hugh White, U.S. Attorney's Office, Washington,DC, for U.S.

### SENTENCING OPINION

SPORKIN, District Judge.

This matter is before the Court on the sentencing of Defendant Alvin Webb. On December 6, 1994, Defendant Webb pled guilty to a one-count information charging distribution of 50 grams or more of cocaine base, 21 U.S.C. § 841(a)(1) and § 841(b)(1)(A)(iii). On February 16, 1995, Defendant Webb's sentencing was postponed, so that he could enter an inpatient drug treatment program. He later absconded from the drug treatment program and was arrested on an outstanding warrant on February 10, 1997. The Court has considered the Presentence Investigation Report (the "PIR") and heard argument on April 1, 1997.

### ANALYSIS

**I. The Guidelines Range**

Defendant Webb has one criminal history point, establishing a criminal history category of I. The guideline for Defendant Webb's offense under 21 U.S.C. § 841(a)(1) and (b)(1)(B)(iii) is found in Section 2D1.1(a)(3) of the *Guidelines Manual.*[1] That section provides that offenses involving distribution of at least 50 grams of cocaine base, but less than 150 grams, have a base offense level of 32.

---

1. The 1995 edition of the *Guidelines Manual* has been used in this case.

The Court finds that Defendant Webb is entitled to a 3 level reduction of his offense level for Acceptance of Responsibility pursuant to U.S.S.G. § 3E1.1(b). Defendant Webb not only accepted responsibility for his involvement in this offense at a very early stage of the investigation, he also provided timely information to law enforcement authorities concerning his involvement and the involvement of others.

The Court also finds that Defendant Webb is entitled to a 2 level reduction based on the Specific Offense Characteristics, pursuant to U.S.S.G. § 2D1.1(b)(4). He meets the criteria set forth in subdivisions (1)—(5) of U.S.S.G. § 5C1.2 (Limitation of Applicability of Statutory Minimum Sentences in Certain Cases) [2] and the offense level is level 26 or greater.

After increasing Defendant Webb's Total Offense Level by 2 levels for Obstruction of Justice, pursuant to U.S.S.G. § 3C1.1, the Court finds that Defendant Webb's Total Offense Level is set at 27 before consideration of departure. The Guidelines call for a sentence of 70—87 months under such circumstances.

## II. Departure From the Guidelines Range

Under 18 U.S.C. § 3553(b), the sentencing court may impose a sentence outside the range established by the applicable guideline, if the court finds "there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described above."

The Court finds that a departure from the Guidelines is warranted in this case. The principal mitigating circumstance here is Defendant Webb's addiction to drugs, specifically crack cocaine. The PIR reports that De-

fendant Webb "started smoking marijuana while in his mid-teens, consuming the herb twice weekly ... he commenced smoking cocaine and eventually crack cocaine in 1977." PIR, page 7. The Court has also heard testimony from Detective Perry on February 25, 1995 who essentially identified Defendant Webb as only a low-level street dealer.

Defendant Webb was not a large-scale dealer, but simply a drug addict. His criminal conduct in this case, as well as his abscondence, can be explained by his addiction. Defendant Webb needs drug treatment, not a 70—87 month period of incarceration. Indeed, if Defendant Webb were privileged to be a member of a different socio-economic class, he would now be on his way to the Betty Ford Clinic rather than a Federal Correctional Institution.

What is more, the Guidelines range is disproportionate and unduly harsh in this case, and would subject Defendant Webb to constitutional and legal deprivations. Even the Court's imposed sentence—41 months—might be too long. It makes no sense to turn our jails into long term addict housing.

This is another case where the government played a key role in the determination of Defendant Webb's ultimate sentence. Defendant Webb is charged with having distributed 50 grams or more of cocaine base rather than a lesser amount because the undercover officer involved in the case arranged to make an arrest only after purchasing 55.85 grams on February 18, 1994, thereby establishing a high mandatory and/or increasing the minimum guidelines sentence. If the undercover officer had arrested Defendant Webb after making lesser purchases from him on February 2 and 14, 1994, then Defendant Webb would be facing a sentence of less severity. The sentencing court should have the right to take this fact into account. Indeed, the Court would hope that the Sentencing Com-

---

**2.** The criteria set forth in U.S.S.G. § 5C1.2 (1)—(5) are: "(1) the defendant does not have more than 1 criminal history point ... (2) the defendant did not use violence ... in connection with the offense ... (3) the offense did not result in death or serious bodily injury to any person; (4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense ... [and] (5) not later than the time of the sentencing

hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense ..." In this case, Defendant Webb had but 1 criminal history point prior to committing the immediate offense. His offense involved neither violence nor the supervision of others in the commission of a crime, and the Court finds that he has spoken truthfully of the case.

mission would address the issue of so-called government buys in arriving at an appropriate sentence in such cases—especially as in this case where an addict is an easy prey for the government to get another notch on its belt. This court is unable to discern how putting away the Defendant, an admitted narcotics addict, for a 70—87 month sentence would contribute to ridding this nation of its drug scourge.

Why is this nation's criminal justice system in this age of high tech unable to differentiate between the drug lord and the addict? Why has it become so politically unpopular for this nation's political leaders to speak out on the need to reform the sentencing regime? One size does not fit all. While it seems that the populace does not want to return to the pre-guidelines era, it is clear from the ten years that guidelines sentencing has been in operation that some adjustments are absolutely necessary. With our experience under guidelines sentencing, a much fairer system can be produced—one that will not turn our prisons into addict centers and will produce savings of some $30,000 a year, the estimated yearly cost of housing a prisoner.[3]

The Court finds that a departure was warranted in this case from Total Offense Level 27 to 22 and that the sentence of 41 months imposed in this case, as stated in the Judgment and Commitment Order issued on April 1, 1997, is a much more appropriate and justifiable sentence. This Court has recommended that the Defendant receive drug treatment during his incarceration.

---

**3.** One suggestion that could improve the system would be establishing a special three-judge panel to review a sentence when the sentencing court departs from the posted guidelines sentence. This three-judge panel would have authority to affirm or reject the departure. The standard of review of the sentencing judge's sentence would be abuse of discretion. This regime would not be redundant and lack cost effectiveness. The three-judge panel would not be brought into routine cases. Under this proposal, the three-judge panel would only be empowered where the sentencing judge actually departs from the guidelines when the defendant is initially sentenced. In such cases, the three-judge court would be empaneled immediately and its decision would be based solely on the sentencing aspect of the case. There would be a cost savings because the Court of Appeals panel that would review the case for trial errors would not have to spend time deciding the appropriateness of the sentence. The panel could serve for a specific term or be brought together on an *ad hoc* basis. A trial judge should be included as a member of the panel and perhaps the panel could include the judge who imposed the sentence. Other details could be added if it is determined to further pursue this recommendation.