**UNITED STATES of America, Appellant,**

v.

**Alvin WEBB, Appellee.**

No. 97–3059.

United States Court of Appeals,
District of Columbia Circuit.

Argued Dec. 8, 1997.

Decided Feb. 3, 1998.

Thomas J. Tourish, Jr., Assistant U.S. Attorney, Washington, DC, argued the cause for appellant, with whom Mary Lou Leary, U.S. Attorney, Washington, DC, and John R. Fisher, Assistant U.S. Attorney, were on the briefs.

Evelina J. Norwinski, Assistant Federal Public Defender, Washington, DC, argued the cause for appellee, with whom A.J. Kramer, Federal Public Defender, was on the briefs. William G. Spencer, Assistant Federal Public Defender, Washington, DC, entered an appearance.

Before: GINSBURG, HENDERSON, and TATEL, Circuit Judges.

Opinion for the Court filed by Circuit Judge GINSBURG.

GINSBURG, Circuit Judge:

Defendant Alvin Webb pleaded guilty to distribution of more than 50 grams of crack cocaine. When sentencing Webb, the district court departed downward from the sentencing range specified in the United States Sentencing Guidelines chiefly due to Webb's addiction to drugs but also due in part to the Government's decision not to arrest Webb earlier, when he had made small sales to an undercover officer and would have received a lesser sentence under the Guidelines. Because the district court relied upon impermissible factors in reaching its decision to depart from the Guidelines, we remand the case for resentencing within the proper range.

## I. BACKGROUND

By his own admission Alvin Webb sold cocaine base in the 500 block of Florida Ave., N.W., in Washington, D.C. for "about three years" before finally being arrested in March 1994. An addict himself, he said "the suppliers would just give me the stuff to give to the people.... I never received any money. All I received was just drugs for that."

Acting upon information from a confidential informant, an undercover agent of the Drug Enforcement Administration located Webb and bought crack cocaine from him three times in February 1994, in quantities of 5.3 grams, 6.3 grams, and 55.8 grams. Focusing upon the third sale, the Government charged Webb with one count of distributing 50 grams or more of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(iii). Webb entered a plea of guilty and agreed that he should be held accountable under the "relevant conduct" provision of the Sentencing Guidelines for the first and second sales as well. See U.S.S.G. § 1B1.3. The additional 11.3 grams did not affect Webb's sentencing range, however. See id. § 2D1.1(c)(4) (table setting base offense level at 32 for distribution of 50 to 150 grams of cocaine base).

At Webb's initial sentencing hearing defense counsel suggested "delaying the sentencing to see if Mr. Webb can benefit from inpatient drug treatment with the Veterans Administration for some period of time and ... maintain some type of employment." The court agreed to grant Webb a continuance in order "to allow him to take certain steps so he can meet the downward departure grounds set forth in *United States v. Harrington,* 808 F.Supp. 883 (D.D.C.1992) based on his drug rehabilitation efforts." The court released Webb into the custody of his brother, an investigator with the D.C. Department of Corrections, on the condition that Webb enroll immediately in the VA drug

rehabilitation program, which takes four to six months to complete.

After one month, Webb dropped out of the program and out of sight. He resumed using drugs and remained a fugitive from justice for 18 months.

Although the offense to which Webb pleaded guilty carries a statutory minimum sentence of ten years' imprisonment, the Congress has recently provided a "safety valve" that enables a district court to impose a sentence in accordance with the applicable Guidelines and without regard to the statutory minimum sentence when certain conditions obtain.* The district court determined—and the Government does not dispute—that Webb may be sentenced without regard to the statutory minimum.

The base offense level for the distribution of 50 to 150 grams of crack cocaine is 32. U.S.S.G. § 2D1.1(a)(3); *id.* § 2D1.1(c)(4) (table). Webb qualifies for an automatic two-point reduction under the heading of Specific Offense Characteristics, U.S.S.G. § 2D1.1(b)(6), because he meets the "safety valve" criteria noted above and his base offense level was greater than 25. Webb's probation officer recommended a two-point increase for Obstructing or Impeding the Administration of Justice, U.S.S.G. § 3C1.1, because Webb had "absconded from inpatient drug treatment, resumed drug use and failed to return to Court for sentencing." In view of Webb's obstruction of justice, the probation officer also suggested that Webb was not entitled to any reduction for Acceptance of Responsibility, U.S.S.G. § 3E1.1. *See id.* Application Note 4 ("Conduct resulting in an enhancement under § 3C1.1 . . . ordinarily indicates that the defendant has not accepted

responsibility for his criminal conduct"). With an offense level of 32 and a criminal history category of I, the probation officer calculated that Webb should be sentenced in the range from 121 to 151 months.

At Webb's final sentencing hearing the prosecutor asked for a sentence in the indicated range. Defense counsel requested a three-point reduction for acceptance of responsibility (notwithstanding the enhancement for obstruction of justice), which would have yielded an offense level of 29 and a sentencing range of 87–108 months. The court not only granted the requested three-point reduction but also declined to give the two-point enhancement for obstruction of justice, apparently because the court did not regard Webb's 18–month absence as willful. The court explained:

> It's because he doesn't control his own body. That's the problem. He doesn't control himself. He's out of control. He didn't do it to defy anybody. He hasn't done it in a defiant act. He did it because it's impossible for him.

The court thus gave an overall reduction of five points—two for meeting the "safety valve" criteria and three for acceptance of responsibility, with no enhancement for obstruction of justice—yielding an offense level of 27 and a sentencing range of 70–87 months.

Although defense counsel had neither asked for a departure from the Guidelines nor proffered any ground for departure, and although the presentence report had identified "no known factors that would warrant a departure in this case," the district court told Webb that even after reducing his offense

---

* The conditions are that:

(1) the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines;

(2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

(3) the offense did not result in death or serious bodily injury to any person;

(4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines

and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848; and

(5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

18 U.S.C. § 3553(f); U.S.S.G. § 5C1.2.

level to 27 it still had a problem with sentencing him:

> Now here is my problem. My problem is that your offense level, that these Guidelines grossly overstate the offense level here. It's grossly disproportional to the crime. And the crime here is addiction. As I said before, if you were in a different economic bracket in this country, you'd probably be out at the Betty Ford Clinic.... So I've got to reduce it down because of its disproportionality.

Thus the district court departed downward *sua sponte* from the Guidelines range by some 30 months: "I'm going to reduce it down to an offense level 22, and I'm going to sentence you to 41 months in prison. I think 41 months is even much too long for you."

Anticipating that it would do something like this, the court had indicated earlier in the hearing that it expected to be reversed. Addressing itself to the Government, the court said: "I realize that you people hold all the weapons in this war on drugs, and I'll give you an easy one to get me reversed on.... I'll give you an easy one."

Two months after sentencing Webb the district court issued an opinion defending its sentence upon three grounds. First, the court explained, "The principal mitigating circumstance here is Defendant Webb's addiction to drugs, specifically crack cocaine." *United States v. Webb,* 966 F.Supp. 16, 17 (D.D.C.1997). Second, the court stated its belief that "the Guidelines range is disproportionate and unduly harsh in this case, and would subject Defendant Webb to constitutional and legal deprivations." *Id.* Finally, the court observed that

> the government played a key role in the determination of Defendant Webb's ultimate sentence.... If the undercover officer had arrested Defendant Webb after making lesser purchases from him ... then Defendant Webb would be facing a sentence of less severity

and opined that "[t]he sentencing court should have the right to take this fact into account." *Id.*

Not surprisingly, the United States appealed the sentence.

## II.   ANALYSIS

The Government has expressly declined to challenge the district court's calculation of Webb's offense level (27) and criminal history (category I). The only issue it raises upon appeal is whether the district court abused its discretion by departing downward from the Guidelines sentencing range of 70–87 months for the reasons it gave. We conclude that none of those reasons justifies a departure and that, therefore, the district court abused its discretion.

### A.   Addiction to Drugs

■ The Supreme Court has instructed a court considering a departure from the Sentencing Guidelines first to ask itself:

> 1) What features of this case, potentially, take it outside the Guidelines' 'heartland' and make it a special, or unusual, case?
>
> 2) Has the Commission forbidden departures based on those features?
>
> 3) If not, has the Commission encouraged departures based on those features?
>
> 4) If not, has the Commission discouraged departures based on those features?

*Koon v. United States,* 518 U.S. 81, ——, 116 S.Ct. 2035, 2045, 135 L.Ed.2d 392 (1996) (quoting *United States v. Rivera,* 994 F.2d 942, 949 (1st Cir.1993)). Here the district court identified Webb's drug addiction as the "principal mitigating circumstance" that, in its view, takes this case outside the heartland of the guideline for drug distribution. *Webb,* 966 F.Supp. at 17.

This potentially mitigating circumstance falls at the first hurdle, however, because the Sentencing Commission has essentially forbidden departure on that basis; the Guidelines plainly state that "[d]rug or alcohol dependence or abuse is not a reason for imposing a sentence below the guidelines." U.S.S.G. § 5H1.4. Although that directive is in the form of a "policy statement" rather than a "guideline," it is still "an authoritative guide" for a court contemplating a departure from the Guidelines. *Williams v. United States,* 503 U.S. 193, 200, 112 S.Ct. 1112, 1119, 117 L.Ed.2d 341 (1992). Indeed, the Supreme Court has specifically confirmed

that certain factors listed in part 5H of the Guidelines, including drug dependence, "never can be bases for departure." *Koon,* 518 U.S. at ——, 116 S.Ct. at 2044.

Webb's counsel recognizes as much and so argues that

> [t]he district court here did not depart because it believed Mr. Webb's addiction made him less culpable, as is forbidden under the Guidelines. Rather, the court departed because it believed that drug use—*i.e.,* buying drugs to feed his addiction—was Mr. Webb's only criminal conduct.

The departure was appropriate, Webb's counsel suggests, because "[s]mall-time purchase, possession and use are not within the heartland of distribution cases for 50 grams or more of crack cocaine." The problem with this position is that Webb did not plead guilty to small-time purchase, possession, or use; he pleaded guilty to distributing more than 50 grams of cocaine base in a single transaction. That transaction places him squarely in the heartland of distribution cases for 50 grams or more of crack cocaine.

Webb argues in the alternative that the district court legitimately departed from the Guidelines because Webb's conduct does "not cause or threaten the harm or evil sought to be prevented by the law proscribing the offense at issue," U.S.S.G. § 5K2.11, namely, as Webb sees it, acting as the "kingpin" or "mastermind" of a major drug operation. We reject that argument not only because the district court did not purport to rely upon § 5K2.11 as a basis for its departure from the Guidelines but also because that section is manifestly inapplicable. The Congress has in effect defined a "major" drug trafficker as one who distributes 50 grams or more of crack. Thus, the whole purpose of 21 U.S.C. § 841(b)(1)(iii) is to prevent anyone from doing precisely what Webb pleaded guilty to doing: selling more than 50 grams of crack.

To sum up, although the district court may be correct in saying that Webb's "criminal conduct in this case, as well as his abscondence [sic], can be explained by his addiction," 966 F.Supp. at 17, in the regime established by the Sentencing Reform Act, neither the district court's speculation nor the defendant's addiction can justify a departure from the Guidelines. The Sentencing Commission "has proscribed, as a categorical matter, consideration of the factor." *Koon,* 518 U.S. at ——, 116 S.Ct. at 2051. The district court's reliance upon Webb's addiction was mistaken as a matter of law and therefore, "by definition," an abuse of its discretion. *Id.* at ——, 116 S.Ct. at 2047.

**B. Undue Harshness**

■ The Supreme Court also made clear in *Koon* that "[a] district judge now must impose on a defendant a sentence falling within the range of the applicable Guideline, if the case is an ordinary one." 518 U.S. at ——, 116 S.Ct. at 2044. Because, as we have seen, Webb's addiction does not remove his case from the heartland of crack distribution cases, the district court must impose a sentence falling within the Guideline range notwithstanding its personal opinion that "the Guidelines range is disproportionate and unduly harsh in this case." 966 F.Supp. at 17.

■ We have already had occasion to explain that

> disproportionality does not, in itself, provide an appropriate basis for a downward departure. Unless the disproportionality between crime and punishment is so extreme that it violates the Eighth Amendment ... the sentences established for various crimes under the Guidelines cannot be set aside based merely on their perceived severity.

*United States v. Beckham,* 968 F.2d 47, 54 (D.C.Cir.1992) (emphasis deleted). We reaffirm that principle today and hold that the district court erred by disregarding it.

Although the district court suggested that imposing a sentence within the Guidelines range "would subject Defendant Webb to constitutional and legal deprivations," 966 F.Supp. at 17, neither the district court nor Webb has identified any such deprivation, and we do not see any. The district court's disagreement with the policies embodied in the Sentencing Guidelines does not authorize it to depart: "To permit departures for that reason would be to eviscerate the Guidelines, reestablishing the very judicial discretion in

sentencing that the Guidelines were designed to confine." *Beckham,* 968 F.2d at 54 (citing *Mistretta v. United States,* 488 U.S. 361, 396, 109 S.Ct. 647, 667–68, 102 L.Ed.2d 714 (1989)).

### C. Government Role in Determining Sentence

■ The district court noted, correctly but trivially, that "[i]f the undercover officer had arrested Defendant Webb after making [the two] lesser purchases from him ... then Defendant Webb would be facing a sentence of less severity." 966 F.Supp. at 17. The court then opined that a "sentencing court should have the right to take this fact into account," and upon that basis departed downward from the range specified in the Sentencing Guidelines. *Id.* Perhaps because we had already rejected "sentencing entrapment" as a basis for obtaining a lesser sentence, *see United States v. Walls,* 70 F.3d 1323, 1329–30 (D.C.Cir.1995), the district court did not purport to revive the theory as a ground for departure and instead blandly described the police conduct in question as "arrang[ing] to make an arrest only after purchasing 55.85 grams [in the third transaction], thereby ... increasing [Webb's] minimum guidelines sentence." 966 F.Supp. at 17. Webb likewise purports to disavow any reliance upon "sentencing entrapment" or "sentencing manipulation" but maintains that "police conduct" may nevertheless be a permissible factor to consider for a departure from the Guidelines.

Following the lead of the Supreme Court in *Koon,* we begin by asking whether any feature of this case potentially takes it outside the Guidelines' heartland. We find none: Webb patrolled Florida Avenue offering to sell crack; that it was the police who upon three occasions accepted his offer is irrelevant to his culpability for those sales.

Similarly, that the police did not arrest Webb after their first or second purchase cannot, without more, take this case out of the heartland of drug distribution cases. Application Note 3 to the relevant conduct Guideline (§ 1B1.3) anticipates that law enforcement agents may wait until a defendant has made multiple sales before arresting him:

> For example, where the defendant engaged in three drug sales of 10, 15, and 20 grams of cocaine, as part of the same course of conduct or common scheme or plan, ... the total quantity of cocaine involved (45 grams) is to be used to determine the offense level even if the defendant is convicted of a single count charging only one of the sales.

U.S.S.G. § 1B1.3, Application Note 3. Repeat purchases preceding an arrest are a common and legitimate law enforcement tactic. As the district court acknowledged in this very case, "the government may need to engage in a number of transactions with low level street drug merchants in order to find the source of the drugs." Nor is it apparent how aggregation of the quantities of drugs that Webb sold to the police might overstate his offense level, for he crossed the 50–gram sentencing threshold in a single sale.

The Commission has recognized one situation in which use by the police of a legitimate law enforcement tactic might warrant a departure from the Guidelines: the Commission authorizes departure when the police in a reverse sting sell drugs at an artificially low price and thereby lead a defendant to purchase "a significantly greater quantity ... than his available resources would have allowed" him to buy at the market price. U.S.S.G. § 2D1.1, Application Note 15. We need not speculate about what other kinds of police conduct might warrant a departure; it suffices to say that the actions of the police in this case do not constitute such a mitigating circumstance. There is no claim and no evidence in this case that the police overpaid for the drugs or in any other way led Webb to commit crimes beyond those that he otherwise would have committed. There being nothing in the record to suggest that the conduct of the police makes this case "special, or unusual," *Koon,* 518 U.S. ——, 116 S.Ct. at 2045, we hold that the district court abused its discretion by departing from the Guidelines.

### III. CONCLUSION

As the foregoing account clearly shows, Judge Sporkin not only abused his discretion

in sentencing the defendant in this case, he did so knowingly; indeed, he expressly invited the court of appeals to reverse his decision. In this way Judge Sporkin more than expressed his disagreement with the law he is sworn to uphold, which he could have done in *obiter dicta*; he wreaked havoc in the administration of justice in this case. And in the end, the only result is grief on all sides: The United States Attorney and the Federal Public Defender each had to write learned briefs and this court had to hear argument and write an opinion—all at considerable expense to the public; the defendant had his hopes raised, inevitably to be dashed; and the decision of the district court had to be reversed. Accordingly, we remand this case for the district court to resentence the defendant within the Guideline range of 70–87 months.

*So ordered.*