**UNITED STATES of America**

v.

**Robert J. LESTER, Defendant.**

**No. CRIM.A.03–0033.**

United States District Court,
E.D. Pennsylvania.

June 20, 2003.

Michael L. Levy, U.S. Attorney's Office, Philadelphia, PA, for Plaintiffs.

J. Scott O'Keefe, Philadelphia, PA, for Defendants.

### MEMORANDUM & ORDER

KATZ, Senior District Judge.

On March 3, 2003, Robert J. Lester pleaded guilty to two counts of transporting child pornography in interstate commerce, in violation of 18 U.S.C. § 2252(a)(1). The Indictment also charged Mr. Lester with Attempting to Entice a Minor to Engage in Sexual Activity, in violation of 18 U.S.C. § 2422(b).[1] Although he did not plead guilty to this count, the plea agreement provides that it will be used to calculate his U.S. Sentencing Guidelines ("USSG") range. The defendant and the government agree that for sentencing purposes the offense level is 24, which provides a sentencing range of 51 to 63 months' imprisonment as the defendant has no criminal history.[2] Before the court is Mr. Lester's Motion for a downward departure under Section 5K2.0 of the Guidelines. Upon consideration of the parties' submissions, and after a hearing, the court denies the defendant's request for a downward departure.

### I. Background

Mr. Lester is a first-time offender whose offense conduct consists of sending two images of child pornography over the in-

---

1. This charge related to Mr. Lester's phone conversations with a female with whom he had corresponded in an internet "chat room." The government alleges that Mr. Lester telephoned this female, an undercover FBI agent posing as a girl in the 7th grade, and discussed meeting her in a hotel room to perform sexual acts.

2. *See* Presentence Investigation Report at 2–3. The Sentencing Guidelines and statutes that were in effect at that time the defendant committed the offense control these proceedings. Recent restrictions on departures under these circumstances, *see* Prosecutorial Remedies and Other Tools against the Exploitation of Children Today (PROTECT) Act of 2003, Pub.L. No. 108–21, 117 Stat. 650, are inapplicable. The government agrees that the *ex post facto* clause bars application of the PROTECT Act to the defendant. *See* Government's Response to the Defendant's Motion for Downward Departure at n. 1.

ternet to an undercover FBI agent posing as a twelve-year-old girl. Mr. Lester was a subscriber to America Online and came under investigation for frequenting chat rooms that advertised sexually explicit talk between men and younger girls. The offense conduct occurred between November 26, 2002 and December 18, 2002, while the defendant was employed as a teacher at Upper Merion High School. By all accounts, Mr. Lester never came in physical contact with a minor in a sexual manner and never had inappropriate contact or conversations with any of his students. This last fact, not surprisingly, was irrelevant to Mr. Lester's suspension from his teaching position immediately following his arrest and his own recognition that he will never again work in this field.

When confronted by the government, Mr. Lester admitted to the charges and entered into a plea agreement. Mr. Lester has been in federal custody since December 19, 2002. Mr. Lester now seeks a downward departure from the Sentencing Guidelines on grounds of diminished capacity in that he suffers from an Obsessive–Compulsive Personality Disorder and a sexual addiction that significantly impaired his ability to control his behavior and contributed to his commission of these offenses.

## II. Discussion

The Sentencing Commission has described the appropriate grounds for departure from the Sentencing Guidelines in a policy statement, which provides in part:

Under 18 U.S.C. § 3553(b), the sentencing court may impose a sentence outside the range established by the applicable guidelines, if it finds "that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulat-

ing the guidelines that should result in a sentence different from that described." Circumstances . . . cannot, by their vary nature, be comprehensively listed and analyzed in advance. The decision as to whether and to what extent departure is warranted rests with the sentencing court on a case-specific basis. Nonetheless, this subpart seeks to aid the court by identifying some of the factors that the Commission has not been able to take into account fully in formulating the guidelines.

USSG § 5K2.0.

Each factor discussed in subpart 5K2 is a so-called "encouraged factor" and the court may depart if the applicable guideline does not already take it into account. *See Koon v. United States*, 518 U.S. 81, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996). The Sentencing Commission identifies a defendant's diminished capacity as one of these factors:

A sentence below the applicable guideline range may be warranted if the defendant committed the offense while suffering from a significantly reduced mental capacity. However, the court may not depart below the applicable guideline range if (1) the significantly reduced mental capacity was caused by the voluntary use of drugs or other intoxicants; (2) the facts and circumstances of the defendant's offense indicate a need to protect the public because the offense involved actual violence or a serious threat of violence; or (3) the defendant's criminal history indicates a need to incarcerate the defendant to protect the public. If a departure is warranted, the extent of the departure should reflect the extent to which the reduced mental capacity contributed to the commission of the offense.

USSG § 5K2.13.[3]

The Commission defines "significantly reduced mental capacity" as "a significantly impaired ability to (A) understand the wrongfulness of the behavior comprising the offense or to exercise the power of reason; or (B) control behavior that the defendant knows is wrongful." USSG § 5K2.13, comment (n.1).

### A. Eligibility under 5K2.13(1)-(3)

Before reaching the merits of the defendant's Motion, the court must determine whether he is precluded from seeking a departure under 5K2.13(1)-(3). The first condition is that drug use or other intoxicants did not cause the defendant's reduced capacity. In an examination by psychologist Gerald Cooke, Ph.D., Mr. Lester admitted that he had used drugs. *See* Report of Dr. Cooke, Exhibit A to Defendant's Motion for Downward Departure (hereinafter "Cooke") at 5. Mr. Lester specified that he used marijuana heavily during high school and on a less frequent basis until the summer of 2002; that he occasionally used cocaine and amphetamines until 1999; and that he drinks moderately during the summer. *Id.* There

is no evidence that substance abuse caused Mr. Lester's sexual addiction or Obsessive–Compulsive Disorder and nothing indicates that alcohol or drug use contributed to the offense conduct that occurred in November and December, 2002.

The second condition, that the offenses did not involve actual violence or the serious threat of violence, is also met. Mr. Lester's offenses, two counts of transmitting child pornography in violation of 18 U.S.C. § 2252(a)(1),[4] did not involve actual violence or the serious threat thereof. In *United States v. McBroom,* 124 F.3d 533 (3d Cir.1997), the Third Circuit determined that the possession of child pornography is a non-violent offense. Although the *McBroom* court analyzed this offense under the former version of Section 5K2.13, its conclusion that "[t]he mere possession of child pornography does not have as an element the use, attempted use, or threatened use of physical force against the person of another" remains relevant to the instant case. *Id.* at 542. The court finds that Mr. Lester's transmission of child pornography did not involve actual violence or the serious threat of violence.[5]

---

3. The three circumstances under which a departure is precluded were imposed by a 1998 amendment to Section 5K2.13 and clarified that a departure under this section is not necessarily open to anyone who did not commit a "crime of violence," as that term is defined in Section 4B1.2. *See United States v. Askari,* 159 F.3d 774 (3d Cir.1998) (en banc) (remanding in light of amended § 5K2.13); USSG Appendix C, Amendment 583 comment (n.1) (2002).

4. Pursuant to the terms of the Plea Agreement, the defendant's sentencing range has been calculated *"as if* the defendant had been convicted of the additional count" of Attempting to Induce a Minor to Engage in Sexual Activity, despite the fact that he did not plead guilty to this count. Plea Agreement ¶ 9 (emphasis added). This charge does not affect Mr. Lester's eligibility for a departure under

section 5K2.13(2) because it is not one of the offenses of which he has been adjudged guilty.

5. The court does not wish to suggest that the possession and transmission of child pornography does not fuel demand for an industry that inflicts violence on innocent children. The government has information concerning the two real girls who are depicted in the pornographic images that Mr. Lester sent to the undercover FBI agent. The first girl was photographed by an adult male who is now a fugitive; the second was abused by her stepfather, who was convicted and sentenced in 1998 to 12½ years in prison. *See* Government's Change of Plea Memorandum at 4 (listing information from FBI Special Agent Christopher Trifiletti and Detective Constable Christopher Pickup of the Manchester, England police). The high penalties for posses-

■ The final consideration in Mr. Lester's eligibility to seek a departure is whether his criminal history indicates that a sentence below the applicable Guidelines range would endanger the public. As a preliminary matter, the court notes that Mr. Lester has no criminal history apart from the offense conduct. Mr. Lester's possession of child pornography alone does not indicate that he is a grave threat to public safety, but the fact that he sent these images to a female he believed to be twelve years old raises more serious concerns. Viewing such material could cause a young girl serious emotional distress and the situation is fraught with the risk that an adult could use the exchange to lure the recipient into a dangerous situation. Mr. Lester claims that he sent the pornographic images to the "girl" in order to maintain their internet conversation so that he could eventually ask for her number and they could have phone sex. *See* Report of Dr. Sadoff, exhibit to Government's Response to Defendant's Motion (hereinafter "Sadoff") at 8. Even accepting the expert reports that Mr. Lester never seriously contemplated any physical meeting, his interest in sexually explicit phone conversations with underage girls threatens their well-being. The court finds that some period of incarceration is needed to protect the public, however, Mr. Lester does not present so severe a threat that any sentence below the Guidelines would endanger the public. Therefore, the defendant is eligible to seek a departure under 5K2.13.

### B. Merits of the Defendant's Motion for a Downward Departure

To warrant a departure, the defendant must show that he is unable to (1) understand the wrongfulness of the offense conduct; (2) exercise the power of reason; or (3) control behavior that he knows is wrongful. The first two criteria do not apply. Mr. Lester's education and career attest to his mental capacity to understand why his behavior was wrong and to exercise reason. Therefore, Mr. Lester must prove that he has a "significantly impaired ability to ... control behavior that [he] knows is wrongful." *See* USSG, Appendix C amendment 583 (1998), comment (n.1); (amending section 5K2.13 in part to adopt holding of *United States v. McBroom*, 124 F.3d 533 (3d Cir.1997) that diminished capacity includes both cognitive and volitional impairments).

In support of his Motion, the defendant has offered the report of Gerald Cooke, Ph.D., a licensed psychologist who interviewed the defendant and administered several diagnostic tests. Dr. Cooke's interview and the Probation Department's Presentence Investigation Report reveal that Mr. Lester, now 44 years old, was raised by both parents in a relatively secure and nurturing environment. Cooke at 2–3. Mr. Lester was educated in Catholic school through the twelfth grade and went on to earn Bachelor of Arts and Masters Degrees. Mr. Lester married about seven years ago, has no children, and enjoys travel, cooking, sports, and music. He struggles with his weight and blood pressure, but is in generally good physical health and has never received

---

sion of child pornography reflect the hope that punishing consumers of such material will slow the industry, aiding concomitant efforts to find and prosecute its producers. *See United States v. Harvey*, 2 F.3d 1318, 1328 n. 12 (3d Cir.1993). Sentencing, however, is case-specific and the court will only consider

whether there is any violence directly attributable to the defendant's offense conduct. Whether the defendant's transmission of the above material to a minor is a threat to public safety, as opposed to a serious threat of violence, is discussed *infra*.

treatment for any mental illness.[6]  Dr. Cooke reports that the defendant has frequent sexual thoughts and some sexual fantasies involving teenage girls, but he "does not have the kind of cognitive distortions that are usually characteristic of pedophiles" and he has "minimal motivation to actually act on his pedophilic interests." Cooke at 6, 10.  Dr. Cooke diagnoses Mr. Lester's preoccupation with sexual thoughts and impulse control as "(1) Personality Disorder NOS with Histronic and Dependent Features; (2) History of Drug Abuse; and (3) Sexual Disorder: Paraphilias: Voyeurism, Fetishism, and Pedophilia (sexual attraction to females)."  *Id.* at 10.  Dr. Cooke opines that the defendant's sexual addiction [7] constitutes a "significantly reduced mental capacity" as defined in the Sentencing Guidelines because his "sexual urges were overpowering and he was significantly impaired in his ability to control them."  *Id.* at 11.  He also concludes that Mr. Lester's sexual addiction and Personality Disorder "significantly and strongly contributed to the commission of the offenses."  *Id.*

At the government's request, the defendant was examined by Robert L. Sadoff, M.D. on May 23, 2003.  Dr. Sadoff agrees with Dr. Cooke's diagnosis of personality disorder, but he would not use the term "addiction" with respect to Mr. Lester's sexual urges because the defendant has no adverse physical response when not involved in his sexual fantasies.  Sadoff at 11.  Dr. Sadoff's opinion diverges from that of Dr. Cooke in that Dr. Sadoff would not characterize the defendant's diagnoses as a "significant impairment in his mental functioning that requires a downward departure."  *Id.* at 12.  Dr. Sadoff ascertained that Mr. Lester used pornographic images to initiate "chat room" exchanges that he hoped would lead to phone sex, the primary object of his sexual urges.  As Dr. Sadoff and the government point out, there are several more direct methods of obtaining phone sex partners than the route taken by the defendant.  This supports Dr. Sadoff's conclusion that Mr. Lester's needs, as affected by any personality disorder, are not "so overwhelming that they control his life."  Sadoff at 12.  In addition, Dr. Sadoff "would not refer to [the defendant's] sexual needs as a significant impairment in his mental functioning . . . ." *Id.*

■  Upon consideration of the reports summarized above and the evidence presented at the hearing, the court finds that Mr. Lester does not have a significantly impaired ability to control behavior that he knew was wrongful.  Although it is clear that Mr. Lester felt urges to maintain his explicit conversations despite knowledge that his contact with the "girl" was wrong, the court finds that Mr. Lester has not met his burden of showing that he qualifies for a departure under the terms of 5K2.13.  If Mr. Lester suffered from a significant impairment of his ability to stop seeking out phone sex, it is doubtful that he could have functioned so successfully as a full-time high school teacher and set aside additional time to spend with his family and participate in a wide range of community and sports activities.  Dr. Sadoff's point that Mr. Lester did not pursue other options to satisfy his urge to have phone

---

**6.**  Dr. Cooke does report that the defendant recalls attending one "therapy session" about five years ago but the name of the doctor and the reason for the visit are unclear.  Cooke at 6.

**7.**  Although Dr. Cooke uses this term to describe Mr. Lester's volitional impairment, he acknowledges that the Fourth Edition of the Diagnostic and Statistical Manual of Mental Disorders ("DSM–IV") does not have a category that clearly reflects sexual addiction.

sex, but instead accessed child pornography as part of a more complicated plan to initiate phone sex, is also persuasive. *See United States v. Maack,* 59 F.Supp.2d 448, 451–52 (E.D.Pa.1999) (denying downward departure because defendant had not shown that sexual addiction and personality disorders significantly impaired his volition to commit criminal acts that were only indirectly related to sexual experiences).

Even if the court were to accept that Mr. Lester's volition was significantly impaired with respect to using pornography, the court could only depart to the extent that the Sentencing Commission has not already considered volitional impairments in formulating the sentence for the transmission of child pornography. *See* USSG § 5K2.0 (stating that where the applicable guideline and offense take into consideration an encouraged factor, that is one described in Section 5K2, a departure is only warranted "if the factor is present to a degree substantially in excess of that which ordinarily is involved in the offense."); *Koon v. United States,* 518 U.S. 81, 96, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996) (holding that if the encouraged factor is "already taken into account by the applicable Guideline, the court should depart only if the factor is present to an exceptional degree or in some other way makes the case different from the ordinary cases in which the factor is present."). In the government's sentencing memorandum, it submits that " 'diminished capacity' is already taken into account in the guideline for trafficking in the images of the sexual abuse of children." Government's Sentencing Memorandum at 3. The relevant Guideline, Section 2G2.2, offers no textual support for this assertion, although when the Sentencing Commission formulated the guideline sentence, it may have

considered that some individuals who send or receive child pornography suffer from personality disorders or a type of sexual addiction. *See United States v. Silleg,* 311 F.3d 557, 562–63 (2d Cir.2002) (finding that district court erred in holding that it could not depart under § 5K21.3 because the Sentencing Commission already considered diminished capacity in formulating child pornography guideline range); *but see United States v. Caro,* 309 F.3d 1348, 1352–53 (11th Cir.2002) (finding that defendant's sexual addiction was typical of persons convicted of collecting child pornography and therefore the defendant's case was inside the heartland and did not merit a downward departure under § 5K2.13).

The Third Circuit's decision in *United States v. McBroom,* 124 F.3d 533 (3d Cir. 1997), is controlling on this issue of whether the guidelines for child pornography offenses already consider a perpetrator's mental capacity. The *McBroom* court vacated a decision of the district court that it had no authority to depart in a child pornography case based on the prior version of 5K2.13, which did not specify whether diminished capacity included volitional impairments. In a footnote, the Third Circuit stated, "The encouraged factor of section 5K2.13 is not taken into account by the guideline provisions applicable to this case, and so the district court was authorized to depart if it found that McBroom satisfied the requirements of 5K2.13." *Id.* at 539, n. 6. Because the sexual addiction and personality disorder suffered by the defendant in *McBroom* appears more severe than that of Mr. Lester, the government could still argue that this case is within the heartland in terms of the emotional state of those persons who deal with child pornography.[8] However such an ar-

---

8. At least one court in this district has distinguished *McBroom* and declined to depart in a

child pornography case based on a diagnosed volitional impairment. *See United States v.*

gument is not required, as the court has determined that Mr. Lester does not have a significantly reduced mental capacity. While the court recognizes that it has discretion to depart from the Sentencing Guidelines under Section 5K2.13, it will not do so in this case.

An appropriate Order follows.

## ORDER

**AND NOW**, this 20th day of June, 2003, upon consideration of the Defendant Robert J. Lester's Motion for a Downward Departure from the Sentencing Guidelines, the Government's Response thereto, and after a hearing, it is hereby **ORDERED** that the request for a downward departure based on diminished capacity is **DENIED**.

*Motto,* 70 F.Supp.2d 570, 573–76 (E.D.Pa. 1999) (denying downward departure based in part on expert testimony that half the subjects in a sample of men attracted to child pornography could be diagnosed with a personality disorder similar to the defendant, so his circumstances could not be said to fall outside the heartland of cases considered by the Sentencing Commission).