**UNITED STATES of America,**

**v.**

**Christine COATES, Defendant.**

**No. CRIM.00–0170 PLF.**

United States District Court,
District of Columbia.

Aug. 1, 2003.

Steven Snyder, Assistant United States Attorney, Washington, DC, for Government.

A.J. Kramer, Federal Public Defender for the District of Columbia, Washington, DC, for Defendant.

## OPINION

PAUL L. FRIEDMAN, District Judge.

This matter is before the Court for re-sentencing of the defendant after remand in a manner consistent with the directives of the court of appeals in *In re Sealed*

*Case,* 292 F.3d 913 (D.C.Cir.2002). The probation officer assigned to this matter, the defendant and the government all submitted memoranda in aid of resentencing, and the Court heard oral argument · on January 31, 2003. The Court determined that it required supplemental briefing on one issue raised at argument for the first time, and the parties subsequently filed memoranda on this issue. Upon consideration of the sentencing memoranda, the oral arguments of counsel and the relevant law, the Court enters the following findings and conclusions with respect to the defendant's sentencing.

## I. BACKGROUND

At the time of her arrest, the defendant was a 28–year old drug user with a $300 to $500 a day habit. She allegedly sold cocaine base, or crack, to an undercover officer of the United States Park Police on three occasions in April and May of 1999. For her actions, the defendant was charged in a six-count indictment with three counts of unlawful use of a communications facility, in violation of 21 U.S.C. § 843(b), and three counts of unlawful distribution of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1). On July 28, 2000, the defendant pleaded guilty to Count Six of the indictment, one of the distribution counts, and agreed for the purpose of calculating her sentence under the United States Sentencing Commission Guidelines Manual ("Guidelines" or "Guidelines Manual") that the amount of drugs involved was between 150 and 500 grams of cocaine base or crack, the precise amount being 217.4 grams. *See* Opinion of July 13, 2001 at 1 ("Opinion of July 13").

For the defendant's original sentence, the Court calculated that under the Guidelines the base offense level for distribution of between 150 and 500 grams of cocaine base or crack is 34. *See* Opinion of July 13

at 3. With a three level adjustment for acceptance of responsibility as a result of the defendant's plea, the adjusted offense level was 31. In addition, the government agreed that the defendant met all five statutory criteria that made her eligible for the "safety valve" and a two-level decrease. *See id.* Under the Guidelines, the defendant's total offense level therefore was 29 and, with no criminal history points, she was in Criminal History Category I, making her Guideline sentencing range 87 to 108 months. In addition, because she was safety valve eligible, the Court was not required to impose the statutory mandatory minimum sentence of ten years. *See id.*

After determining the applicable Guideline sentencing range, the Court undertook an in-depth analysis of the disparity that exists in the Guidelines between the offense levels for powder cocaine versus crack cocaine, the unfair effect that disparity has on many defendants, and the Sentencing Commission's failure to consider adequately this mitigating factor in formulating the relevant Guideline range. *See* Opinion of July 13 at 5–12. The Court then discussed several additional factors unique to the defendant that the Court found relevant to its sentencing analysis: (1) the defendant's lack of any prior criminal history; (2) her attempts to assist the government despite its decision not to file a Section 5K1.1 motion on her behalf; (3) her acceptance of responsibility; (4) her desire for rehabilitation and her commitment to getting help for her addiction; and (5) her substantial family and community ties. *See id.* at 12–15. Citing the Commentary to Section 5K2.0 of the Guidelines, which provides that departure may be proper in an extraordinary case that, because of a combination of characteristics or circumstances, "differs significantly from the 'heartland' of cases covered by the guidelines in a way that is important to

achieve the statutory purposes of sentencing," *id.* at 14–15, the Court concluded:

Based on the 1995 and 1997 Sentencing Commission reports that demonstrate that the Commission did not consider relevant evidence and information in formulating the crack cocaine guidelines, Judge Wald's reasoning in *United States v. Anderson* [82 F.3d 436, 441 (D.C.Cir. 1996)], the lack of any congressional imperative to impose a mandatory minimum sentence on this safety valve eligible defendant, the application of the safety valve, and the totality of circumstances reflecting the atypicality of this defendant, this Court finds that a downward departure from the otherwise applicable guideline sentencing range is authorized. Such a departure is warranted to a level that fairly and accurately reflects the seriousness of the crime. In the Court's view, that sentence is the one that would be imposed on a similarly situated defendant who pled guilty to unlawful distribution of the same amount of powder cocaine (150 to 500 grams)—somewhere between 18 and 24 months.

*Id.* at 15–16.

The Court imposed a sentence at the top of that Guideline sentencing range—24 months imprisonment with a recommendation that the defendant be placed in a 500–hour drug treatment and counseling program while in prison, followed by a three-year period of supervised release with participation in a drug treatment program under the direction of the Probation Office. *See* Opinion of July 13 at 16.

The government appealed the Court's sentence on the ground that none of the factors considered by the Court in its "totality of the circumstances" analysis was valid or present to a degree sufficient to distinguish this case from "the heartland cases covered by the guidelines" under Section 5K2.0. *In re Sealed Case,* 292 F.3d at 916 (internal quotation omitted). The court of appeals vacated the Court's original sentence, primarily on the ground that the crack/powder disparity is not a valid basis for departure under controlling case law, and remanded the matter for resentencing of the defendant "under a totality of the circumstances" analysis that takes account of "the three valid factors" mentioned in the court of appeals' opinion and "any other valid factors the district court may consider relevant ...," keeping in mind the Sentencing Commission's admonition that such departures are available only in "extraordinary cases." *See id.* at 917. The court of appeals determined that of the six factors the Court considered in its original "totality of the circumstances" analysis, the Court properly could consider three at resentencing: the defendant's acceptance of responsibility, her desire to seek rehabilitation, and her family and community ties. *See id.*

On resentencing, the defendant asks the Court to consider these three factors and three new arguments in tailoring the appropriate sentence. First, she asks the Court to find that she was a minor participant in the criminal activity, thus justifying a two-level reduction in her base offense level under Section 2D1.1(a)(3) of the Guidelines. *See* Defendant's Sentencing Memorandum ("Def.'s Mem.") at 25–30. Second, the defendant requests the Court to consider the fact that as a result of the length of her original sentence, she could not receive the benefit of 18 U.S.C. § 3621(e)(2)(B), even though she successfully completed a 500–hour residential drug treatment program while in prison. *See* Defendant's Supplement to Sentencing Memorandum ("Def.'s Supp. Mem.") at 2. Section 3621(e)(2)(B) provides that in certain circumstances the Bureau of Prisons ("BOP") may reduce a prisoner's sentence

by up to twelve months upon successful completion of the drug treatment program. *See* 18 U.S.C. § 3621(e)(2)(B). Finally, the defendant asks the Court to consider her post-sentencing rehabilitation efforts. *See* Def.'s Mem. at 33–34.

## II. DISCUSSION

### A. *The Applicable Guidelines Manual and Ex Post Facto Considerations*

■ Under the recently enacted Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today Act of 2003 (the "PROTECT Act"), Pub.L. 108–21, 117 Stat. 650, a district court to which a case is remanded by a court of appeals for resentencing is to apply the Guidelines that were in effect on the date of the original sentencing. *See* 18 U.S.C. § 3742(g)(1). If the Court determines upon calculation of a defendant's sentence, however, that use of the Guidelines Manual in effect on the date that the defendant is sentenced—or, in the case of a resentencing, the Guidelines Manual in effect on the date of the original sentencing— "would violate the *ex post facto* clause of the United States Constitution, the court shall use the Guidelines Manual in effect on the date that the offense of conviction was committed." U.S. SENTENCING GUIDELINES MANUAL ("U.S.S.G.") § 1B1.11(b)(1) (2002). In either case, the Guidelines Manual that is applied "shall be applied in its entirety." U.S.S.G. § 1B1.11(b)(2). This "one-book" rule precludes application of one Guidelines section from one Manual and a separate section from another. *See id.*[1]

■ For the application of a specific statute or Guidelines Manual to violate the *ex post facto* clause, the application (1) must be "retrospective," that is, it must "apply to events occurring before [that statute's or that Manual's] enactment"; and (2) must "disadvantage the offender affected by it." *Miller v. Florida*, 482 U.S. 423, 430, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987) (quoting *Weaver v. Graham*, 450 U.S. 24, 29, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981)). An application is "retrospective" if it "changes the legal consequences of acts completed before its effective date." *Id.* A defendant is "disadvantaged" if the new or amended law or Guidelines "alter[s] the definition of criminal conduct or increas[es] the punishment for the crime." *Lynce v. Mathis*, 519 U.S. 433, 441, 117 S.Ct. 891, 137 L.Ed.2d 63 (1997). Indeed, most *ex post facto* claims involve increases in punishment. *Id.* ("bulk" of *ex post facto* claims are "claims that the law has inflicted a 'a [sic] greater punishment, than the law annexed to the crime, when committed'") (quoting *Calder v. Bull*, 3 U.S. 386, 390, 3 Dall. 386, 1 L.Ed. 648 (1798)). These principles apply to laws or sentencing Guidelines enacted or amended after a defendant has committed criminal acts that would make his or her sentence more onerous. *See Miller v. Florida*, 482 U.S. at 431, 107 S.Ct. 2446; *United States v. Thomas*, 114 F.3d 228, 268 n. 19 (D.C.Cir. 1997) (retroactive application of amended Guidelines would violate *ex post facto* clause); *United States v. Lam Kwong-Wah*, 924 F.2d 298, 304 (D.C.Cir.1991) ("if the amendments to the Guidelines effected substantive changes that would adversely

---

1. To determine whether a Guidelines Manual otherwise to be applied at the time of sentencing or resentencing violates the *ex post facto* clause, a court must compare the two possibly applicable versions of the Guidelines Manual *in toto*. *See United States v. Keller*, 58 F.3d 884, 891(2d Cir.1995). Because of the "one-

book" rule, this approach applies even if the Manual the Court ultimately employs does not provide some of the benefits the non-selected Manual may have afforded the defendant, so long as the overall sentence is lower. *See id.* at 890–91.

affect [a defendant's] sentencing, then they may not be applied retroactively without violating the *ex post facto* clause of the Constitution"); *see also United States v. Maldonado,* 242 F.3d 1, 5 (1st Cir.2001) (when Guidelines have been made more severe in the interim, version in effect at time of crime is used to avoid *ex post facto* increase in penalty).

■ At the time of the original sentencing in this case, the Court used the 2000 edition of the Guidelines Manual. Section 5K2.19 of the 2000 Guidelines Manual, however, provides that post-sentencing rehabilitative efforts, "even if exceptional, . . . are not an appropriate basis for a downward departure when resentencing the defendant for that offense." U.S.S.G. § 5K2.19 (2000). This policy statement was added to the Guidelines effective November 1, 2000, after the date of the offense committed by the defendant in this case but before her original sentencing. *See* U.S.S.G. app. C, amend. 602. Thus, while the PROTECT Act suggests use of the 2000 edition of the Guidelines Manual, *see supra* at 5–6, such application would prevent the Court from considering this argument for departure. Because application of the 2000 edition of the Guidelines Manual thus would significantly disadvantage the defendant, its application would run afoul of the *ex post facto* clause of the Constitution. *See United States v. Yeaman,* 248 F.3d 223, 228 (3d Cir.2001) (because Section 5K2.19 was enacted after original sentencing, consideration of post-sentencing rehabilitative efforts is appropriate); *United States v. Maldonado,* 242

F.3d at 5 (where Guidelines made more severe by addition of Section 5K2.19 since time of offense, Guidelines in effect at time of offense are applied to avoid *ex post facto* increase in penalty).[2] To avoid such an *ex post facto* application of the Guidelines, the Court therefore will apply the 1998 Guidelines Manual in resentencing the defendant, the Manual in effect on the date of the offense, rather than the edition of the Manual in effect on the date of the sentencing.

■ This does not end the *ex post facto* analysis, however. The PROTECT Act directs that "the Court shall not impose a sentence outside the applicable Guideline range except upon a ground that (a) was specifically and affirmatively included in the written statement of reasons required by Section 3553(c) in connection with the previous sentencing of the defendant prior to the appeal; *and* (b) was held by the court of appeals, in remanding the case, to be a permissible ground for departure." 18 U.S.C. § 3742(g) (emphasis added). Thus, while the Court would be able to consider the defendant's desire to seek rehabilitation, there would be no opportunity by application of the PROTECT Act for the Court to consider the defendant's post-conviction rehabilitation efforts or "any other valid factors the district court may consider relevant" on resentencing, *In re Sealed Case,* 292 F.3d at 917, because such factors would not have been articulated bases for departure in the Court's original sentencing opinion. To be bound by this provision of the PROTECT Act retrospectively would disadvantage the defen-

---

**2.** The government argues that because the defendant's argument for departure on the basis of her completion of the 500–hour residential drug treatment program is just another form of a post-sentencing rehabilitation departure, the defendant's argument for departure under 18 U.S.C. § 3621(e)(2)(B) also is precluded by Section 5K2.19. *See* United

States' Response to Defendants' Supplemental Sentencing Memorandum ("Gov't Supp. Resp.") at 3. Assuming that the government is correct, *see* note 5 *infra,* the use of the 2000 edition of the Guidelines Manual in connection with defendant's argument on this ground also would implicate the *ex post facto* clause.

dant and therefore would itself violate the *ex post facto* clause of the Constitution. *Miller v. Florida,* 482 U.S. at 430, 107 S.Ct. 2446. These provisions of the PROTECT Act therefore cannot be applied retroactively. *See United States v. Lester,* Crim. Action No. 03–0033, 268 F.Supp.2d 514, 515, n. 2 (E.D.Pa.2003) (where criminal conduct took place prior to enactment of PROTECT Act, "the *ex post facto* clause bars application of the PROTECT Act to the defendant").

## B. *Adjustment: Minor Participant*

Under the Guidelines, a defendant may receive a two-level adjustment for her mitigating role if the Court determines that she was a minor participant in the criminal activity at issue. *See* U.S.S.G. § 3B1.2. Before it entertains the defendant's request for such an adjustment in this case, however, the Court must address a threshold issue: whether the Court can consider the defendant's argument for a minor participant adjustment where she failed to request such a departure at the time of her original sentencing.

### 1. Availability of Mitigating Role Adjustment

■ In its remand order, the court of appeals directed this Court to consider "any valid factor" that the Court considers relevant in resentencing the defendant. *In re Sealed Case,* 292 F.3d at 917. The government claims that a newly-raised "valid factor" in the context of a resentencing is limited to those factors that were unavailable to the defendant at the time of the first sentencing, citing *United States v. Whren,* 111 F.3d 956 (D.C.Cir.1997). *See* Gov't Mem. at 5. In *Whren,* the court of appeals held that "upon a resentencing occasioned by a remand, unless the court of appeals expressly directs otherwise, the district court may consider only such new arguments or new facts as are made newly

relevant by the court of appeals' decision— whether by the reasoning or the result." *United States v. Whren,* 111 F.3d at 960.

■ As the government concedes, however, the court of appeals recently recast the *Whren* standard to allow a defendant to raise a new departure argument if the defendant can demonstrate "good cause" why the issue was not presented to the Court at the original sentencing. *United States v. McCoy,* 313 F.3d 561, 565 (D.C.Cir.2002) (*en banc* ); *see also United States v. Johnson,* 331 F.3d 962, 965 (D.C.Cir.2003). Such a "good cause" inquiry includes consideration of the reasons for the defendant's omission at the original sentencing and the adverse effect consideration of the new argument will have, direct or systemic, on the government or the courts. *See United States v. McCoy,* 313 F.3d at 565–566. The court of appeals counsels against a finding of good cause where (1) the loss of the benefit of the district court's fresh recollection of a trial occurs, (2) the defendant withheld the claim for strategic purposes, (3) consideration of the new argument would require additional fact-finding, (4) review would cause disruption in the proceedings, or (5) consideration of the new factor prejudices the government. *See id.* at 566.

In this case, the defendant claims that she did not raise the mitigating role adjustment because her lawyer at the time of sentencing was unaware of the government's prior concession to her former lawyer to remove from the plea agreement language prohibiting the defendant from arguing for adjustments to the offense level and for downward departures. This lack of awareness, the defendant argues, is evidenced by the new defense lawyer's statement to the Court at a status conference prior to sentencing that he was precluded from making such an argument and by his failure to raise the adjustment in his

sentencing memorandum. *See* Def.'s Mem. at 24. The defendant also charges that the government's failure to correct defense counsel is relevant to the good cause assessment because the government should have corrected what it knew to be a misunderstanding of the parties' agreement on the part of a new defense lawyer. *See id.* at 25; *see also* Transcript of April 18, 2001 Status Conference ("April 18 Tr.") at 5 ("I wasn't the one who did the plea obviously."). While the Court urged counsel at the status conference to "look at the plea agreement again to see what your limits are," counsel either failed to do so or reviewed an earlier version of the agreement before the limiting language had been removed. April 18 Tr. at 5. The record on this matter is silent. In any case, the Court does not believe the defendant should suffer for what appears to be failures on the part of both his own lawyer and the government prosecutor.

The circumstances of this case do not raise the concerns expressed by the court of appeals in *McCoy*. First, because there was a plea, there is no loss of the Court's recollection of the trial testimony that might effect the sentence. Second, for similar reasons, there is no requirement for additional fact-finding because the facts the Court would consider in evaluating this adjustment request are documented in the probation officer's Presentence Investigation Report and subsequent memorandum, as well as in the proffers, arguments and submissions of counsel. Third, there therefore will be no disruption of any proceedings. Fourth, defense counsel failed to raise the adjustment because he mistakenly thought he was prohibited from doing so by the terms of the plea agreement, not for any strategic purpose. Fifth, the defendant stands to be severely prejudiced if his counsel's error—and the government prosecutor's failure to correct it when he had the opportunity to do so—prevents the

Court from considering the argument now. The government will not be prejudiced by this consideration, as it has had a full opportunity to brief and argue this adjustment issue in connection with resentencing. Sixth, the claim would not have been determinative at the initial sentencing in light of the Court's original decision to depart below the applicable Guideline range under Section 5K2.0. Finally, consideration of the merits now will not affect any parties' future incentives because so few sentences are remanded for resentencing, a fact that creates a strong incentive for both the government and criminal defendants to raise their adjustment claims in the first instance. *See United States v. McCoy,* 313 F.3d at 566; *United States v. Johnson,* 331 F.3d at 965.

The Court concludes that the defendant has demonstrated good cause for her failure to raise the minor participant adjustment at the original sentencing. To consider the matter now does not adversely affect either the government or the court system. The Court therefore will consider the defendant's request for a mitigating role adjustment of two levels for her minor role in the criminal activity.

### 2. The Defendant's Role as Minor Participant

Section 3B1.2 of the Guidelines permits a court to decrease by four levels a defendant's offense level if the defendant was a minimal participant, and by two levels if the defendant was a minor participant, in any criminal activity. *See* U.S.S.G. § 3B1.2. Adjustment for a minimal participant is "intended to cover defendants who are plainly among the least culpable of those involved in the conduct of a group." *See id.,* Comment 1. "Under this provision, the defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the

activities of others is indicative of a role as minimal participant." *Id.* A minor participant is a defendant who is "less culpable than most other participants, but whose role could not be described as minimal." *See id.,* Comment 3.

■ While the distinction between minimal and minor participant articulated in the Application Notes is singularly unhelpful, the D.C. Circuit has determined that in order for a defendant to qualify for a minor participant adjustment,

> the evidence available to the court at sentencing must, at a minimum, show (i) that the "relevant conduct" for which the defendant would, within the meaning of section 1B1.3(a)(1), be otherwise accountable involved more than one participant (as defined in section 3B1.1, comment. (n.1)) and (ii) that the defendant's culpability for such conduct was relatively minor compared to that of the other participant(s). The application of section 3B1.2 is inherently fact-bound and largely committed to the discretion of the trial judge.

*United States v. Caballero,* 936 F.2d 1292, 1299 (D.C.Cir.1991). Furthermore, in conducting its analysis under Section 3B1.2, a court should look to "the contours of the underlying scheme itself rather than the mere elements of the offense charged." *Id.* at 1298 (quoting *United States v. Rodriguez,* 925 F.2d 107, 111 (5th Cir.1991)) (internal quotation omitted). The fact that there is only one defendant who has been charged in the case does not necessarily mean that there was only one participant for purposes of this analysis. *See id.* The Court is to examine the defendant's culpability relative to others in the context of the relevant conduct that is being considered. *See United States v. Graham,* 317 F.3d 262, 272 (D.C.Cir.2003); *see also United States v. Washington,* 106 F.3d 983, 1018 (D.C.Cir.1997) (the court is to

consider "a defendant's culpability relative to that of his comrades . . . .").

According to the Presentence Investigation Report, the defendant's relevant criminal activity was directed by at least two if not three other individuals: "Craig," "Craig's wife" and "Craig's brother." In most instances, the defendant had to consult with these individuals to see if the amount of drugs requested by the undercover officer could be made available and, on all but one occasion on which the defendant provided cocaine to the undercover officer, she was not in possession of the drugs herself, but had to leave the undercover officer and go to another location to retrieve the cocaine from one or more of these individuals. *See* Presentence Investigation Report ("PSR") at 4–5. On one occasion, after the undercover officer discussed a drug transaction with the defendant, he observed the defendant leave her car and enter a residence. Shortly thereafter, the officer observed a man and a woman leave that residence, enter the car in which the defendant had arrived and depart. The defendant did not provide drugs to the agent at that time. *See id.* at 5. The next day the undercover officer received a telephone call from a male who informed the officer that the drugs the officer had requested from the defendant the day before now were available and that the officer could retrieve the drugs from the defendant the following day. *See id.*

On the occasion of the sale to which the defendant pleaded guilty, the defendant initially entered the undercover agent's vehicle and the two drove to a second location in order to pick up the drugs from "Craig's wife." *See* Factual Proffer of the Government, filed July 28, 2000. The defendant did not retrieve the drugs from "Craig's wife" at that time and had to postpone the transaction. *See id.* Later that same day, the defendant notified the

undercover officer that "Craig's wife" had come and gone and asked the agent to return to the defendant's house. Upon his return, the agent was introduced to "Craig's brother," to whom the agent paid $3,600. *See id.* When the defendant's father unexpectedly arrived, the agent accompanied the defendant to an alley where "Craig's brother" waited in a tan Honda. *See id.* The defendant retrieved the drugs from "Craig's brother" and handed them to the agent. *See id.; see also* PSR at 5–6.[3]

On these facts, it is apparent to the Court that in contrast to the defendant's source—who supplied the defendant with the drugs she sold to the undercover officer and to whom the money was paid—the defendant played a minor role in the criminal activity.[4] In the words of the Guidelines, she was "less culpable" than the other relevant participants. U.S.S.G. § 3B1.2, Comment 3. Accordingly, the Court will adjust the defendant's base offense level downward by two levels pursuant to Section 3B1.2 of the Guidelines. *See United States v. Mitchell*, 49 F.3d 769, 785 (D.C.Cir.1995) (where court makes an express finding that a defendant is less culpable than others, the Guidelines "issue an unequivocal directive to decrease by two levels") (internal quotation omitted).

As previously noted, *supra* at 2, the defendant's total offense level at the original sentencing would have been 29 had the Court not departed downward. With a Criminal History Category of I, her Guide-line sentencing range therefore would have been 87 to 108 months. Because the defendant was safety valve eligible, the Court was not and is not required to impose the statutory mandatory minimum sentence of ten years. *See* Opinion of July 13 at 3. With the downward adjustment for her mitigating role as a minor participant in the criminal activity, the defendant's offense level now becomes 27. Before considering the defendant's request for departure, the applicable Guideline sentencing range therefore is 70 to 87 months.

## C. Departures

The Court now turns to the question of whether there exist aggravating or mitigating circumstances "of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines that should result in a sentence different from that described." U.S.S.G. § 5K2.0 (quoting 18 U.S.C. § 3553(b)). A factor is deemed to have not been "adequately considered" by the Commission if it either was not reflected in the applicable Guidelines at all or was not reflected to the unusual or exceptional extent that it is present in a particular case. *See Koon v. United States*, 518 U.S. 81, 92–96, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996); U.S.S.G. § 5K2.0. In this case, the defendant suggests two such factors for the analysis in addition to the three factors sanctioned by the court of appeals: (1) the failure of the Bureau of Prisons to grant her a sentence reduction for her successful completion of a 500–hour

---

3. The facts in the preceding two paragraphs were essentially reiterated by the prosecutor at the plea proceeding. *See* Transcript of July 28, 2000 Plea Agreement Hearing at 18–22.

4. The circumstances of this case are distinguishable from those in *United States v. Edwards*, 98 F.3d 1364 (D.C.Cir.1996). While the defendant at times did hold both money and drugs, she did not do so in all the transactions, and she did not attempt to negotiate any side deals for her own benefit to the exclusion of the other participants. *Compare United States v. Edwards*, 98 F.3d at 1371 (upholding denial of minor participant adjustment because defendant directly provided money for drugs and requested separate payment in the form of drugs for arranging transactions).

residential drug treatment program while in prison; and (2) her extraordinary post-sentencing rehabilitation efforts.

### 1. 500–Hour Residential Drug Treatment Program

■ The defendant asserts that because the Court originally imposed only a 24–month sentence, she did not receive a sentence reduction pursuant to 18 U.S.C. § 3621(e)(2)(B) despite her successful completion of the 500–hour residential drug treatment program ("RDAP") while in custody. *See* Def.'s Supp. Mem. at 1–2. Section 3621(e)(2)(B) provides that "[t]he period a prisoner convicted of a non-violent offense remains in custody after successfully completing a treatment program may be reduced by the Bureau of Prisons, but such reduction may not be more than one year from the term the prisoner must otherwise serve." 18 U.S.C. § 3621(e)(2)(B). The defendant argues that because the Sentencing Commission did not consider the defendant's situation in formulating the applicable Guidelines, the Court should depart downward in order to take this fact into account. *See* Def.'s Supp. Mem. at 2. The government counters that the statute vests the power to reduce a sentence on the basis of the successful completion of a RDAP solely in the BOP, and that any sentencing departure by the Court based on this provision unlawfully would usurp the BOP's statutory authority. *See* Gov't Supp. Resp. at 2–3.[5]

The Court agrees with the government. The discretion to grant an early release under 18 U.S.C. § 3621(e)(2)(B) lies with the BOP, not with the Court, and the exercise of that discretion is not mandatory even if the BOP finds that the prisoner has met the criteria for early release. The language of the statute makes that clear. *See* 18 U.S.C. § 3621(e)(2)(A) and (B). *See also Lopez v. Warden*, 531 U.S. 230, 241, 121 S.Ct. 714, 148 L.Ed.2d 635 (2001) ("When an eligible prisoner successfully completes drug treatment, the Bureau thus has the authority, but not the duty, both to alter the prisoner's conditions of confinement and to reduce his term of imprisonment."). While the defendant asserts that the only reason for denial of the early release benefit in this case was the fact that she had completed her sentence essentially at the same time she completed the program, the Court has no evidence before it that had the defendant's sentence been longer she necessarily would have been granted early release by the BOP. Moreover, the defendant still has available to her the possibility of early release under Section 3621(e)(2)(B) should she return to prison under her new sentence. The BOP regulations specifically provide that a prisoner who previously has completed a residential drug treatment program is eligible for consideration by the BOP for a sentence reduction so long as the prisoner notifies his or her institution's drug treatment program "via a Request to Staff." 28 C.F.R. § 550.58(b)(2).[6]

5. The government also asserts that "[d]efendant's completion of the RDAP is properly characterized as post-sentencing rehabilitation" and that "the Sentencing Guidelines prohibit a downward departure on resentencing for completion of a post-sentencing drug treatment program." Gov't Supp. Resp. at 3. While the Court is inclined to agree with the government's characterization of this departure request, it must reject on *ex post facto* grounds the government's argument that Section 5K2.19 precludes consideration of this factor for the reasons discussed in Section II(A), *supra*.

6. Neither the Second Circuit's opinion in *United States v. Williams*, 65 F.3d 301 (2d Cir.1995), nor the district court's decision in *Nelson v. United States*, 206 F.Supp.2d 808 (S.D.W.Va.2002), supports a contrary conclusion. In *Williams*, the court departed downward in order to allow the defendant to enter a BOP drug treatment program otherwise un-

This Court's decision not to depart downward to afford the defendant the direct benefit of Section 3621(e)(2)(B) does not end the Court's consideration of this issue, however. As the BOP regulations themselves indicate, the early release provision is a core "incentive" for RDAP participation. 28 C.F.R. 550.57(a)(4). The fact that the defendant completed the RDAP despite the fact that she would not receive a sentence reduction demonstrates her commitment to rehabilitation and distinguishes her from the many prisoners who participate in rehabilitation programs solely in order to gain early release. This fact is material to the Court's analysis of the defendant's requested departure on the basis of post-sentencing rehabilitation. *See infra* at Section II(C)(2).

### 2. Extraordinary Post–Sentencing Rehabilitation Efforts

 Prior to the promulgation of Section 5K2.19 of the Sentencing Guidelines, the court of appeals in *United States v. Rhodes,* 145 F.3d 1375, 1379 (D.C.Cir. 1998), established that post-sentencing rehabilitation was not a prohibited factor for consideration under the Guidelines and that a sentencing court therefore could consider a defendant's post-sentencing rehabilitation efforts at a resentencing under Section 5K2.0. On resentencing, the court should consider the defendant as he or she "stand[s] before the court 'at that time.'" *Id.* at 1381 (quoting *United States v. Core,* 125 F.3d 74, 77 (2d Cir.1997)). In *Rhodes,* the court of appeals adopted the Third Circuit standard limiting a departure on the basis of post-sentencing rehabilitation to those circumstances in which "the factor [is] present to such an exceptional degree that the situation cannot be considered typical of those circumstances in which acceptance of responsibility is granted." *Id.* at 1383 (quoting *United States v. Sally,* 116 F.3d 76, 80 (3d Cir.1997)) (internal quotation and citation omitted). *See also United States v. Harrington,* 947 F.2d 956, 962 (D.C.Cir.1991) (*Harrington I* ) ("a further reduction may be in order ... only when and if the rehabilitation is so extraordinary as to suggest its presence to a degree not adequately taken into consideration in the guidelines.") (internal quotation and citation omitted).

Applying this standard on remand in *United States v. Harrington,* Judge Oberdorfer concluded that the defendant's post-trial and post-sentencing rehabilitation endeavors were "extraordinary," justifying a departure under Section 5K2.0. *See United States v. Harrington,* 808 F.Supp. 883, 886 (D.D.C.1992) (*Harrington II* ). Prior to his arrest for illegal distribution and possession with intent to distribute cocaine base, Harrington had been addicted to drugs for 12 years and had never been arrested. *See id.* at 885. Post-arrest, the defendant participated in a drug treatment program, remained drug free, and gained the praise of the Chief of the Office of Rehabilitative Services for the District of Columbia. *See id.* at 886. Harrington's greater rehabilitation push, however, came after his original sentencing. The defen-

---

available to him, not in order to secure the benefit of an early release upon completion. *See United States v. Williams,* 65 F.3d at 306. In *Nelson,* defense counsel's error in the defendant's initial sentencing calculation resulted in a longer sentence than appropriate, a delay in the start of the RDAP, and thus a delay in any potential benefit the defendant may have received upon completion of the program. *See Nelson v. United States,* 206

F.Supp.2d at 810. Here, the defendant cannot make a similar claim of prejudice, because her start in the RDAP was not delayed and did not result in a longer period of incarceration. The fact that the defendant's original sentence was not long enough to allow her to benefit from the provision is not a basis for a departure predicated on the "absence" of such relief.

dant's efforts included: (1) voluntary enrollment in and completion of a 48–week residential drug treatment program; (2) re-enrollment in the program after completion for two additional years as an assistant treatment specialist, which included the supervision of 12 program participants and a variety of responsibilities with respect to those new participants; and (3) qualification for becoming a certified addiction counselor in the District of Columbia. *See id.* at 886–87. At each step, Harrington won the enthusiastic praise of his supervisors, who described his efforts as "extraordinary," "a minor miracle" and "outstanding." *Id.* "By any subjective or objective means," Judge Oberdorfer concluded, "Harrington's extraordinary acceptance of responsibility through rehabilitation" justified a full departure. *Id.* at 888. *See also United States v. Dyce,* 975 F.Supp. 17 (D.D.C.1997) (post-sentencing rehabilitation efforts that included participation in residential drug treatment program, completion of vocational medical assistant training, and receipt of employer endorsement, in concert with extraordinary family circumstances, justified departure under Section 5K2.0).

In *United States v. Bradstreet,* 207 F.3d 76, 82 (1st Cir.2000), the First Circuit also determined that a district court could consider a defendant's post-sentencing rehabilitation efforts in "a sufficiently exceptional case." In that case, the defendant's post-sentencing rehabilitation efforts included tutoring less-advantaged inmates, succeeding in the prison's Boot Camp Program, serving as the prison chaplain's assistant, becoming a program assistant and clerk of the prison parenting program, and lecturing at local colleges to business students on ethical perils in the business world. *See id.* at 78–79. Because the defendant's efforts were directed "in a large degree, to others as well," his effort was "exceptional, unusual and worthy of

recognition" and merited a departure. *Id.* (internal citations omitted). Similarly, in *United States v. Green,* 152 F.3d 1202, 1208 (9th Cir.1998), the Ninth Circuit held that the district court had not erred in concluding that the defendant had demonstrated a post-sentencing effort worthy of a departure even though the defendant's efforts occurred while he was completing court-ordered duties. Most convincing to the court was a letter from a group with which Green had been volunteering, which suggested "that Green's work in assisting needy and deprived youths has been exemplary, and that he has gone 'above and beyond' in making himself 'available for daily tutoring, weekend special events, out therapy program, and was instrumental in starting Saturday computer training programs.'" *Id.*

 There are no pre-determined criteria by which a court must evaluate a defendant's request for a departure on the grounds of his or her post-sentencing rehabilitation effort. *See United States v. Green,* 152 F.3d at 1208. It is a highly fact-specific determination best made by the trial court, the court most familiar with the defendant's circumstances in the context of the criminal proceedings generally. *See id.* "Informed by their 'vantage point and day-to-day experience in criminal sentencing,' district courts are best equipped to determine whether a case falls outside the 'heartland.' Because district courts 'see so many more Guidelines cases than appellate courts do,' we defer to their 'institutional advantage . . . in making these sorts of determinations. . . .'" *United States v. Rhodes,* 145 F.3d at 1384 (quoting *Koon v. United States,* 518 U.S. at 98, 116 S.Ct. 2035 (internal citations omitted)).

In this case, the defendant has demonstrated that she has taken extensive steps to turn her life around. Similar to Mr.

Harrington and Ms. Dyce, while at a federal prison camp during the first 14 months of her sentence, she successfully completed a 500–hour comprehensive drug treatment program and went on to complete two additional treatment programs. *See* Def.'s Mem. at 18, and Attachments: Certificate of Completion, FPC 500–hour Comprehensive Drug Treatment Program, dated July 12, 2002; Certificate of Achievement, 12–Step NA Program, dated April 18, 2002; Certificate of Completion, Turning Point Insight Group, dated July 10, 2002. While in the 500–hour residential drug treatment program, the defendant (like Mr. Harrington and Mr. Bradstreet) was selected to be a class representative by the treatment team "due to her leadership skills and positive attitude." Def.'s Mem., Attachment, Drug Abuse Treatment Programs Treatment Summary, dated July 11, 2002.

The defendant subsequently was transferred to a halfway house, where she had no incident reports and was in full compliance with the rules of the facility. *See* Def.'s Mem, Attachment, Letter from [Halfway House Case Manager] to A.J. Kramer ("Halfway House Letter"), dated December 3, 2002; Memorandum from Probation Office dated January 28, 2003 ("Prob.Mem."). The defendant's halfway house case manager commented that "[the defendant] was a pleasure to work with and proved herself in every way." *See* Halfway House Letter. The defendant also secured a job at her former place of employment, an organization that provides residential housing and services for mental health, where she has demonstrated a remarkable effort to meet and go beyond her work responsibilities. *See* Def.'s Mem. at 20. According to the organization's Executive Director, the defendant performed her responsibilities well, completing both various care-taking tasks and administrative duties. In light of her newly-demonstrated initiative and desire to learn new skills, the organization has assigned the defendant additional responsibilities. *See* Def. Mem., Attachment, Letter from [Executive Director] to Judge Paul L. Friedman ("Executive Director Letter"). Most impressive is the Executive Director's description of the defendant's efforts with regard to one of the clinic's most difficult patients, who actively seeks out the defendant for support that no other employee has been able to provide. The executive director described this effort as "a jewel" to the organization. *See id.*

According to the Probation Office, the defendant now is living with her parents who are very supportive. *See* Prob. Mem. at 3. According to her parents and her sister, "[s]he is a totally different person . . . [and] is now drug free and doing well." *Id.* at 4. Since leaving Alderson, she has completed the Next Step drug program, "made significant contributions to group discussions, . . . implement[ed] spiritual practices, and utiliz[ed] her relapse prevention plan . . ." *Id.* Defense counsel also informed the Court at the resentencing hearing that the defendant recently re-enrolled in high school in order to earn her high school diploma rather than merely seeking a G.E.D.

The defendant has gone far beyond simply completing the court-recommended residential drug treatment program. She has completed three separate rehabilitation programs and, in the process, has helped others in her capacity as a class representative. In addition, the defendant completed her residential drug treatment program in prison despite the fact she would not be able to benefit from a sentence reduction that would be available to most other prisoners upon completion of the same program, a factor discussed in greater detail in Section II(C)(1), *supra.* The defendant was a model resident in

her halfway house program and has gained and maintained employment, where she has striven to develop her own skills and to reach out to assist others. Upon consideration of the defendant's personal efforts to overcome her addiction, to develop professionally, and to assist others in the process, the Court concludes that the defendant's post-sentencing rehabilitation effort has been exceptional under the relevant case law and atypical of those circumstances in which the "acceptance of responsibility" adjustment is sufficient to take into account adequately the average rehabilitative efforts of defendants. *See United States v. Bradstreet,* 207 F.3d at 78–79; *United States v. Green,* 152 F.3d at 1208; *United States v. Sally,* 116 F.3d at 81; *United States v. Harrington,* 808 F.Supp. at 886.

The defendant's post-sentencing rehabilitation efforts, her prior acceptance of responsibility for her actions as demonstrated by her plea, her initial resolve to rehabilitate herself, and the strength of her community and family ties as discussed by the Court in its original sentencing opinion (*see* Opinion of July 13 at 13–14), in combination with the lack of any congressional imperative to impose a mandatory minimum sentence on this safety-valve-eligible defendant and the application of the safety valve, together justify the Court's conclusion that a significant downward departure from the otherwise applicable Guideline sentencing range is authorized and is warranted under *Koon,* Section 5K2.0 of the Guidelines, and under this circuit's decisions in *Rhodes, Harrington* and the instant case.

### E. *The Defendant's Sentence*

Once the Court determines to grant a downward departure on the above grounds, it is within the Court's discretion to determine how far to depart. Given the district court's "unique position" to observe a defendant and her family, particularly with the aid and evaluation of a professional, objective probation officer, any departure from the Guidelines that is reasonable in the circumstances will be considered appropriate. *United States v. Green,* 152 F.3d at 1209; *see United States v. Perkins,* 963 F.2d 1523, 1525 (D.C.Cir. 1992) (quoting *Williams v. United States,* 503 U.S. 193, 202, 112 S.Ct. 1112, 117 L.Ed.2d 341 (1992)).

As noted *supra* at 15, before departing downward the Court begins at Offense Level 27, Criminal History Category I, which would yield a Guideline sentencing range of 70 to 87 months. In the circumstances of this case, the Court believes it is reasonable and appropriate to depart downward ten levels to an Offense Level 17. *See United States v. Green,* 152 F.3d at 1209 (11 level departure reasonable on basis of defendant's exceptional effort and fact that "[defendant], and perhaps society, would benefit most from [defendant's] continued work at [his rehabilitation facility] and his continued rehabilitation"). At Offense Level 17 and Criminal History Category I, the applicable Guideline sentencing range is 24 to 30 months. Furthermore, because the defendant has completed her original sentence and has worked exceptionally hard to remain drug-free and place herself on the right path, the Court is inclined to sentence the defendant at the low end of the Guideline range so that her new sentence will be—like her former sentence—24 months in length. It would serve no useful purpose to the defendant or to the community to return the defendant to prison at this point in her development and rehabilitation. The Court will, however, also impose a five-year term of supervised release in order to ensure that it can sentence the defendant to additional incarceration should she fail to continue on

this new path. *See United States v. Williams,* 65 F.3d at 308.[7]

Resentencing in this case is scheduled for September 8, 2003 at 3:00 p.m. Counsel for the parties and the Probation Office are invited to file any supplemental memoranda on or before August 18, 2003. Any reply memoranda shall be filed on or before August 27, 2003.

SO ORDERED.

**7.** In view of this decision, the Court need not address the defendant's argument that the enhanced penalties for crack cocaine are unconstitutional.